# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERRI E. BYRD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-14-457-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Terri E. Byrd requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be AFFIRMED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: whether the decision was supported by substantial evidence, and whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on December 9, 1969, and was forty-three years old at the time of the most recent administrative hearing (Tr. 79 333). She completed the twelfth grade, and has worked as a 911 dispatcher, production expeditor, and a police officer (Tr. 43, 377). The claimant alleges she has been unable to work since an amended onset date of April 14, 2010, due to seizures, migraine headaches, depression, panic attacks, and low back pain (Tr. 371).

## Procedural History

On September 23, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Michael A. Kirkpatrick held an administrative hearing and determined the claimant was not disabled in a written decision dated May 23, 2011 (Tr. 138-157). The Appeals Council reversed and remanded the case for further consideration of the evidence, and ALJ Bernard Porter held a second administrative hearing and again determined that the claimant was not disabled in a written opinion dated October 31, 2013 (Tr. 19-46). The Appeals Council then denied review, so ALJ Porter's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently, sit/stand/walk six hours in an eight-hour workday, and push and pull as much as she could lift and carry, but with the following exceptions: occasionally use foot controls and climb ladders; frequently stoop and crouch, but never crawl; avoid exposure to unprotected heights, moving mechanical parts, and temperature extremes. Additionally, he determined that the claimant required a sit/stand option allowing for a change of position at least every 30 minutes. Due to psychologically-based factors, the claimant could perform simple tasks and make simple work-related decisions; could have occasional interaction with supervisors, co-workers, and the public; and may be off task 5% of the workday and miss one day of work per month. Finally, he found that if she could perform light work she could perform sedentary work (Tr. 32-33). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, merchandise marker, routing clerk, and solderer-dipper (Tr. 44).

## Review

The claimant contends that the ALJ erred: (i) by failing to fully develop the record, (ii) by erroneously determining she engaged in substantial gainful activity (SGA) from April 2010 through February 2011, (iii) by failing to properly assess her RFC, and

(iv) by improperly determined the jobs she could perform at step five. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of degenerative joint disease of the right knee, headaches, gastroesophageal reflux disease, obesity, hypertension, anxiety disorder with panic attacks, depressive disorder, somatoform disorder, personality disorder, non-obstructive coronary artery disease, cognitive disorder, pseudo seizures, and sleep disorder (Tr. 22). The medical evidence reveals that the claimant was regularly treated by Dr. Vikki Sutterfield and in 2009 she was under the care of a psychiatrist for approximately six months.

On April 28, 2011, Dr. Sutterfield completed a physical RFC assessment, indicating that the claimant could sit/stand/walk each one hour at a time and sit/stand each four hours in an eight-hour workday and walk three hours in an eight-hour workday, would need rest breaks at hourly intervals, and would need to alternate sitting and standing at thirty minute intervals or less (Tr. 746). She indicated that the claimant could lift/carry up to five pounds continuously and ten pounds frequently; could occasionally push/pull but frequently work in extended position, above shoulder level, overhead, and reach; could frequently bilaterally grasp/finger; frequently bend and crawl; occasionally squat, stoop, crouch, kneel; rarely climb stairs; never balance or climb ladders, scaffolds, or ramps (Tr. 747-748). She further noted environmental restrictions, and stated that the claimant was having pseudoseizures that were brought on by noises and crowds and that the claimant had uncontrolled shaking during this time and the inability to respond. She noted that the claimant's memory loss was strong and severe, that the claimant had not

been left alone and was not able to drive. She remarked that the claimant was currently disabled secondary to seizures, memory loss, and anxiety, not due to physical limitations (Tr. 748).

The claimant received psychiatric treatment from Dr. Robin Ross, who assessed the claimant with major depressive disorder, recurrent, moderate; generalized anxiety disorder; cognitive disorder NOS (most likely due to medication), as well as migraine headaches and seizure disorder rule out psuedoseizures (Tr. 539-543). From July 2009 through December 2009, the claimant had global assessment of functioning (GAF) scores ranging from 40-60 (Tr. 539-543, 634).

In September 2009, Dr. Patricia J. Walz, Ph.D., conducted a neuropsychological evaluation of the claimant and administered a number of tests. Dr. Walz specifically noted that the claimant's behavior was notable for a variable effort, and therefore the tests were believed to be an underestimate of her true ability, including the IQ test with a full scale score of 72 (Tr. 535). In fact, Dr. Walz found that claimant's effort was so variable it resulted in an invalid profile, that two separate tests designed to measure effort were failed, and another suggested an intentional effort to look worse off than she is. Dr. Walz concluded that the claimant's "spells" were related to pseudoseizures and to a somatoform disorder, and that the clamant appeared "to have significant secondary gain from her physical complaints including attention from her family, decreased stress and pressure, and possibly long term disability" (Tr. 537). She assessed the claimant with somatoform disorder with pseudoseizures, rule out factitious disorder, and dependent traits (Tr. 537).

On September 7, 2011, Dr. Robert L. Spray, Jr., Ph.D., PA completed a psychological evaluation of the claimant (Tr. 749). He noted she seemed tense and somewhat agitated and overwhelmed, and his diagnostic impression was that the claimant had somatoform disorder, NOS, and adjustment disorder with depressed and anxious mood, as well as personality disorder, NOS with hypochondriacal, dependent, and histrionic features (Tr. 752). He assessed her with a GAF range of 45-50 (Tr. 752). He then completed a mental RFC assessment in which he found that the claimant had severe limitations related to dealing with work stresses, performing activities within a schedule, maintaining regular attendance, being punctual within customary tolerances, performing at a consistent pace, performing without an unreasonable number or length of rest periods, demonstrating reliability, and behaving in an emotionally stable manner. He additionally noted ten marked limitations of functioning and 14 moderate limitations (Tr. 753-756).

At the administrative hearing, the claimant testified that prior to her date last insured, she was having migraines two to three times a week, each lasting up to 16 hours with severe ones causing nausea (Tr. 137). She testified that medications did not prevent the migraines, but helped with the nausea and shortening the length of the migraines, and that when she had a migraine, she could not carry out her activities of daily living because she would need to lie down in a dark room, and she experienced nausea (Tr. 138, 142-143). She testified that she took time off under FMLA due to her headaches, but then eventually quit because of them (Tr. 150).

In his written opinion, the ALJ extensively summarized the medical record, as well as the claimant's own testimony and reports from multiple family members and friends. (Tr. 22-43). At step four, the ALJ found, *inter alia*, that Dr. Sutterfield's opinion should be afforded diminished weight, noting Dr. Walz's opinion that the claimant was experiencing pseudo seizures and the potential for secondary gain arising out of them. The ALJ also noted that Dr. Sutterfield released the claimant to work in April 2010. As to the April 28, 2011, physical RFC assessment, the ALJ found that it was internally inconsistent because Dr. Sutterfield cited numerous physical limitations related to sitting, standing, temperature restrictions, grasping, bending, crawling, crouching, stooping, squatting and also pulmonary irritants, *but then* stated the claimant was disabled due to seizures, memory loss, and anxiety, *and not* physical limitations (Tr. 39). The ALJ also noted that the claimant's report of riding a four-wheeler for two hours was inconsistent with Dr. Sutterfield's opinion as to her limitations (Tr. 39). As to Dr. Spray's opinion, the ALJ gave his mental RFC Assessment "little weight" because his examination was "basically normal" but his RFC assessment included severe and marked limitations (Tr. 39-40). Furthermore, the ALJ noted that (i) the claimant had been able to work after the alleged onset date; (ii) that the examination was done in an effort to generate evidence for her disability application, and while legitimate, the context could not be ignored; and (iii) her reported physical pain was in contrast with her reports of riding a four-wheeler for two hours and injuring her knee when getting off a boat (Tr. 40). The ALJ noted the physical RFC recommendation for medium work, but modified it to light work with postural limitations based on the medical evidence in the record. As to

the mental RFC recommendation, the ALJ gave significant weight to the opinions, but found she could occasionally interact with the public based on the claimant's work history reports, as well as notes from examinations and evaluations in the record (Tr. 41).

The claimant first contends that the ALJ failed to develop the record by ordering a consultative examination or re-contacting her treating physicians. It is true that a social security disability hearing is nonadversarial and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-361 (10th Cir. 1993), *citing Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, "it is not the ALJ's duty to be the claimant's advocate[,]" but "the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Henrie*, 13 F.3d at 361 [citations omitted]. If the ALJ had doubts as to any of the evidence, he *could have* re-contacted her treating physicians to clear it up, *see* 20 C.F.R. § 404.1520b(c) ("[I]f after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency . . . We may recontact your treating physician, psychologist, or other medical source."), but he was under no obligation to do so, as the claimant implies, because the ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe

impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166 [citations omitted]. In this case, the claimant asserts that the ALJ should have ordered an additional CE exam, but claimant's counsel did not request that the ALJ order an additional consultative examination regarding the claimant's mental impairments, and the need is not clearly established by the record here. *Hawkins*, 113 F.3d at 1168 (noting that without a request by counsel, a duty will not be imposed on the ALJ to order an examination unless the need is clearly established in the record). Here, the claimant has not met her burden.

The claimant's second contention is that the ALJ erred in finding she had SGA from April 2010 through February 2011 because she did not work for two months out of that time period, and the period is thus better classified as an unsuccessful work attempt. The claimant raised this argument at the hearing, but the ALJ stated in his written opinion that based on her earnings through February 2011, he was not persuaded that it was merely an unsuccessful work attempt. 20 C.F.R. § 404.1574(c)(1) ("Ordinarily, work you have done will not show that you are able to do [SGA] if, after working for *a period of six months or less*, *your impairment* forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the [SGA.]"). Claimant also failed to acknowledge that she was originally off work in October 2010

because she underwent a bilateral salpingo-oophorectomy and lysis of postoperative peritoneal adhesions (notably unrelated to her alleged disabling impairments), and that Dr. Sutterfield then kept her home for an additional month due to depression. More importantly, she fails to acknowledge the regulation stating that "[i]f you worked more than 6 months[, w]e will not consider work you performed at the [SGA] earnings level . . . to be an unsuccessful work attempt regardless of why it ended or was reduced below the [SGA] activity earnings level." 20 C.F.R. § 404.1574(c)(5). Additionally, the ALJ made an alternative finding that the evidence suggested little change in the claimant's condition at all times in the medical evidence and therefore even if she was not engaged in SGA, he would still find she was not disabled from her amended onset date (Tr. 22). As such, the claimant has failed to establish reversible error on this issue.

Third, the claimant contends that the ALJ committed error at step four by: (i) rejecting Dr. Sutterfield's treating physician opinion, (ii) rejecting Dr. Spray's consultative opinion, (iv) improperly assessing her credibility, and (iv) failing to account for her blackout spells. But as discussed below, the ALJ provided a detailed discussion of the relevant evidence in the record, and his opinion clearly indicates that he adequately considered the evidence in reaching his conclusions regarding the claimant's RFC. *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Taking each of the four alleged step four errors in turn, the undersigned Magistrate Judge notes that the ALJ afforded Dr. Sutterfield's opinion diminished weight. An ALJ is required to assign controlling weight to the medical opinions of treating physicians only if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). And even if medical opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 *and* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The pertinent factors include: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator

gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5. As discussed above, the ALJ's treatment of Dr. Sutterfield's opinion meets these standards. The ALJ's opinion was thus sufficiently clear for the Court to determine the weight he gave to Dr. Sutterfield's opinion, as well as sufficient reasons for the weight assigned. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."), *citing* 20 C.F.R. § 404.1527(d)(2).

As to the ALJ's finding that Dr. Spray's opinion is entitled to "little weight," "[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Here, the ALJ provided a detailed discussion of the relevant evidence in the record, explaining why he rejected some portions of Dr. Spray's opinion while further adopting some limitations that were supported in the record. *Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949.

The claimant next argues that the ALJ erred in analyzing her credibility. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ set out the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) her daily activities were not consistent with disabling symptoms and limitations; (ii) she worked after the amended onset date; (iii) she went four-wheeling for two hours and injured her knee when on a boat; (iv) she stopped working in February 2011 because she was fired from her job for indecent exposure for lifting her shirt to show a co-worker a rash, not due to her impairments (Tr. 32-43). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant also asserts that the ALJ failed to properly account for her "blackout spells" or pseudo seizures. The undersigned Magistrate Judge finds that the ALJ did not, however, commit any error in his analysis. He noted and fully discussed the findings of the claimant's various treating and reviewing physicians, indicating that despite her reports of "seizures four to five times per week," she reported to Dr. Sutterfield in May 2013 that she had not experience one since March 2013 (Tr. 35). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5. The ALJ's treatment of the medical evidence in this case meets these standards. The undersigned Magistrate Judge finds that the ALJ specifically noted the various findings of the claimant's treating and reviewing physicians, *adopted* any limitations supported by the medical record, *and still concluded* that she could perform light work with numerous limitations. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. The essence of the claimant's appeal here is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001)

("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

The claimant's final contention is that she cannot perform the jobs identified by the ALJ because she cannot perform the designated RFC. But the ALJ concluded otherwise, and as discussed above, substantial evidence supports the ALJ's determination in this regard. The claimant's fourth contention is therefore without merit.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**